UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CARTER,

        Plaintiff,                    Case Number 08-14877
                                                  Honorable David M. Lawson
v.                                               Magistrate Judge Mona M. Majzoub

D. DOLCE,

        Defendant.
_____/

## ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT, ADOPTING RECOMMENDATION, SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING CASE

This matter is before the Court on the plaintiff's objections to a report issued by Magistrate Judge Mona M. Majzoub recommending that this Court grant the defendant's motion for summary judgment because the plaintiff has not established an element of his *prima facie* case for unconstitutional retaliation and has not made out an Eighth Amendment violation. At the time of the events described in the complaint, the plaintiff was an inmate in the custody of the Michigan Department of Corrections. He filed a complaint alleging that the defendant retaliated against him by charging him with major misconduct when he threatened to file a grievance after the defendant ordered him to wash pots and pans in scalding water without protective gloves. The case was referred to Judge Majzoub to conduct all pretrial proceedings. The defendant then filed her summary judgment motion. On April 3, 2009 Judge Majzoub filed a report recommending that the motion be granted. The plaintiff filed timely objections. After a *de novo* review of the record in light of the plaintiff's objections, the Court finds that the magistrate judge erred in concluding that the plaintiff did not offer sufficient evidence of causation as part of his *prima facie* case. However,

the plaintiff has not offered any evidence to rebut the defendant's assertion that she would have charged the plaintiff with major misconduct regardless of whether he threatened to file a grievance, and therefore the plaintiff has not sustained his burden on summary judgment. Nor has the plaintiff established an Eighth Amendment claim. The Court therefore will reject the magistrate judge's report in part, adopt the recommendation, sustain in part and overrule in part the plaintiff's objections, grant the defendant's motion for summary judgment, and dismiss the case.

I.

Although the plaintiff is currently on parole, in June of 2007, he was incarcerated in the Adrian Correctional Facility serving a sentence for armed robbery. On June 1, 2007, he was working in the kitchen under the direction of the defendant, an employee of the Michigan Department of Corrections (MDOC). The defendant's responsibilities included assigning the prison kitchen duties to prisoners. There is no dispute that the plaintiff was working as a relief worker in the food service area of the correctional facility when the defendant ordered him to wash the pots and pans. From there, however, the stories differ.

The plaintiff asserts in a declaration attached to the complaint signed under penalty of perjury that he "attempted to do the work but was unable to find safety gloves to work in the hot water that[']s above one hundred degrees temper[a]ture hot." Pl's Decl. at ¶ 2. The plaintiff avers that when he told the defendant he needed gloves, she told him that she would try to find him some. She left and came back a short time later and stated "I'm giving you a direct order to go wash pots and pans." *Ibid*. The plaintiff responded, "I ain't going to put my bare hands in that hot water." *Ibid*. The plaintiff and the defendant began to argue, and he says that he told her, "I am writing a grievance on you if you keep trying to force me to wash pots and pans without gloves." *Ibid*. The

defendant left the kitchen and reported the plaintiff to the kitchen officer, who then entered the kitchen and told the plaintiff to "take off his kitchen whites and leave the kitchen and that plaintiff is laid-in pending the outcome of the misconduct Dolce is writing." *Ibid*. Later that day the defendant wrote a misconduct report charging the plaintiff with disobeying her direct order. The plaintiff alleges that the defendant retaliated against him by "falsifying a state document i.e., a major misconduct when Plaintiff informed Defendant that he will file a grievance complaint on her if she continue [sic] to try to make him wash pots and pans without gloves." *Ibid.*

The defendant remembers it differently. She submitted an affidavit that states, "[a]t no time did [the plaintiff] attempt to work this assignment. He became argumentative and tried to tell me what assignments he did not have to work on." Def.'s Mot., Ex. A, Dolce Aff. at ¶ 5. The defendant maintains that after she again gave the plaintiff the direct order to wash the pots and pans, he refused, they argued, and the plaintiff then left the kitchen area. The defendant acknowledges that she issued a written charge against the plaintiff "for refusing to comply with the order and laid in from his assignment pending the hearing on the misconduct." *Id*. at ¶ 7. The defendant states, "I would have written the 'Disobeying a Direct Order' misconduct against the plaintiff regardless of whether he was going to write a grievance because it is my belief that it is not an inmate relief worker's prerogative to refuse to work an assigned task and walk off the assignment after being given a direct order to do so." *Id*. at ¶ 9.

The plaintiff was sent to his cell immediately after this incident, and the defendant wrote a major misconduct charge the same day.

On June 20, 2007, a hearing officer found the plaintiff not guilty of the misconduct charge. He noted that the evidence did not plainly establish whether the water was dangerously hot. The

hearing officer concluded that Dolce's explanation of the events was contradictory: at one point she stated that the plaintiff refused to work, but at another point she stated that the plaintiff had asked for gloves so that he could work. Because he could not determine on that record whether the water temperature was too hot for the plaintiff to work safely without gloves, he dismissed the misconduct charge.

After exhausting his administrative remedies, the plaintiff filed his *pro se* complaint in this Court. He seeks damages for violation of his First Amendment constitutional right to free speech and his Eighth Amendment constitutional right not to be subjected to cruel and unusual punishment.

In her summary judgment motion, the defendant argues that there is no evidence that the plaintiff engaged in protected conduct. She acknowledges that filing a grievance amounts to protected conduct under clear Sixth Circuit precedent; however, she insists that there is no precedent that clearly holds that *threatening* to file a grievance constitutes protected conduct.

The magistrate judge evaluated the plaintiff's retaliation claim by applying the three element test laid out in *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). The magistrate judge assumed that the plaintiff engaged in protected conduct when he threatened to file a grievance, and also assumed that the major misconduct charge could deter a prisoner of ordinary firmness from exercising his First Amendment rights. However, she recommended that the claim be dismissed because the plaintiff "has advanced only conclusory allegations of retaliatory motive unsupported by material facts which are not sufficient to survive summary judgment," and that the body of evidence available will not allow a jury to "reasonably find in [the plaintiff's] favor on the causation element of his retaliation claim." Rep. & Rec. at 5. The magistrate judge reasoned that the plaintiff "fails to cite any specific oral statement made by defendant supporting his allegation

-4-

that she charged him due at least in part to his threat," *ibid.*, there was no mention of this threat in the major misconduct hearing, and the defendant denies that he made it. However, because there is no dispute that the plaintiff refused an order, "[t]his refusal provides a logical basis for the misconduct charge and supports Defendant's assertion that the charge was motivated solely by this refusal and in no part by Plaintiff's alleged threat." *Ibid.*

The plaintiff objected to the magistrate judge's conclusion that proof of specific oral statements were necessary to establish causation. The defendant has not filed objections.

II.

Objections to a report and recommendation are reviewed *de novo*. 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

The defendant did not object to the magistrate judge's conclusion that the plaintiff established the first two elements of his *prima facie* case. "[T]he failure to file specific objections to a magistrate's report constitutes a waiver of those objections." *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). Since the defendant did not challenge those conclusions, the Court need not address those items, since those arguments are waived, *see Thomas v. Arn*, 474 U.S. 140, 149 (1985) (holding that the failure to object to the magistrate judge's report releases the Court from its duty to independently review the motion); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987). However, the issues are sufficiently important to warrant comment by this Court.

The defendant moved for summary judgment. A motion for summary judgment under Fed. R. Civ. P. 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). Thus a factual dispute that "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment that is properly supported. *Kraft v. United States*, 991 F.2d

292, 296 (6th Cir. 1993); *see also Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion may not merely "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If after sufficient opportunity for discovery the non-moving party is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Thus, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff." *Ibid.* (quoting *Anderson*, 477 U.S. at 252) (internal quote marks omitted).

A.

Under Sixth Circuit law,

> [a] retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d at 394.

As noted earlier, the defendant argues that the plaintiff did not engage in protected conduct by threatening to file a grievance, but agrees that "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Thomas v. Eby,* 481 F.3d 434, 439 (6th Cir. 2007). Nonetheless, the defendant is correct that neither the Sixth Circuit nor the Supreme Court has addressed explicitly whether threatening to file a grievance constitutes protected conduct. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (finding against the plaintiff who claimed his protected conduct was threatening to file a lawsuit because he had not shown that a prisoner of ordinary firmness would be deterred); *Scott v. Kilchermann*, 230 F.3d 1359, 2000 WL 1434456, at *2 (6th Cir. Sep. 18, 2000) (holding that a prisoner did not engage in protected conduct when he threatened to file a *frivolous* grievance). *But see Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) (suggesting without further explanation or citation that "it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance").

The Court believes that when it comes to protecting First Amendment rights, including the right to petition the government for redress, there is little difference between retaliating against a

person for filing a grievance, and retaliating for threatening to file one. The right to file a grievance stems from the First Amendment right to free speech and to petition the state for redress of grievances. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). Once a prisoner makes clear his intention to resort to official channels to seek a remedy for ill treatment by a prison employee, retaliation against the prisoner by that employee implicates all the policies intended to protect the exercise of a constitutional right. It appears that the Sixth Circuit treats filing and threatening to file as categorically identical outside the prison context. *See Jackson v. City of Columbus*, 194 F.3d 737, 756-57 (6th Cir. 1999) (holding that an employee engages in protected activity under the First Amendment when he threatens to file a lawsuit on a matter of public concern), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002); *Polk v. Yellow Freight System, Inc.*, 801 F.2d 190, 200 (6th Cir. 1986) (noting that there is "'no legal distinction . . . between the filing of a charge which is clearly protected . . . and threatening to file a charge'" under Title VII's anti-retaliation provisions (quoting *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149, 1156 n. 3 (9th Cir. 1982)).

Moreover, the MDOC policy directive applicable to prisoner grievances requires that a prisoner inform the person with whom he has a dispute about his complaint before filing a formal grievance. *See* MDOC PD 03.02.130, *available at* http://www.michigan.gov/documents/corrections/ 03_02_130_200872_7.pdf. So in a sense, threatening to resort to the formal grievance process is itself the first step in that process. But even if the threat to file a grievance is not viewed as part of the process, a clearly stated intention to file a grievance amounts to protected conduct within the meaning of *Thaddeus-X*. The plaintiff made out this element of his *prima facie* case through the sworn statements in his declaration.

-9-

The magistrate judge also assumed that the plaintiff had met the second prong. This conclusion is unavoidable. "Retaliation against a prisoner is actionable if it is capable of deterring a person of ordinary firmness from exercising his or her right to access the courts." *Thaddeus-X*, 175 F.3d at 398. Not every action is an adverse action; *de minimus* slights and inconveniences do not qualify. *Id.* at 396. "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is adverse." *Id.* at 398. But the Sixth Circuit has held that charging an inmate with a major misconduct violation is sufficiently adverse to "deter a person of ordinary firmness' from the exercise of the right at stake," *id.* at 396, because conviction of such a violation could result in the prisoner's segregation or loss of good time credits. *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002). In this case, the Court is satisfied that a jury could find for the plaintiff on the second element.

The magistrate judge's conclusion that the plaintiff failed to meet the third element is the target of the plaintiff's objections. This argument was not advanced in the defendant's motion for summary judgment. It is true that "the third element – a causal connection between the protected activity and the adverse action – needs to be established by the plaintiffs to complete their affirmative case." *Thaddeus-X*, 175 F.3d at 399. However, "retaliation 'rarely can be supported with direct evidence of intent.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). That is why "[c]ircumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate" to consider when determining whether a genuine issue of fact on the third prong has been established. *Thaddeus-X*, 175 F.3d at 399. The magistrate judge appears to have insisted upon direct evidence

of an improper motive, and she did not consider whether the plaintiff had come forward with other types of evidence.

The Court believes that he did. Here, there is a factual dispute whether the plaintiff threatened to file a grievance. He asserts – in the form of a declaration, which is competent evidence for summary judgment purposes – that he told the defendant of his intent to file, and he immediately was "laid in" pending a major misconduct charge. The major misconduct charge was filed later that day. "[T]emporal proximity alone may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive." *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (internal quotations omitted). Dealing with an analogous requirement in the Title VII context, *see, e.g., Strouss v. Michigan Department of Corrections*, 250 F.3d 336 (6th Cir. 2001) (citing a Title VII retaliation case in a First Amendment retaliation claim); *Johnson v. University of Cincinatti,* 215 F.3d 561 (6th Cir. 2000) (citing a Title VII retaliation case in a First Amendment retaliation claim), the Sixth Circuit has held that temporal proximity may be sufficient in some cases to establish causation, noting the anomalous outcome if the contrary were true:

> [I]f an employer immediately retaliates against an employee upon learning of his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation. Thus, employers who retaliate swiftly and immediately upon learning of protected activity would ironically have a stronger defense than those who delay in taking adverse retaliatory action

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Here, the protected conduct and the defendant's response occurred in the very same day, which is sufficient to give rise to an inference of retaliation. *See ibid.*

"Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399 (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). This issue was not addressed by the magistrate judge.

The evidence in this case shows that the plaintiff refused the defendant's direct order and that he would have been subjected to a misconduct charge regardless of his protected conduct. The plaintiff admits that the defendant gave him a direct order to wash the pots and pans, and he refused by responding "I ain't going to put my bare hands in that hot water." Pl.'s Decl. at ¶ 2. The plaintiff also admits that he "did in fact refuse Defendant's continuing reckless disregard, callous order to harm himself by the putting his bare hands in scalding hot water without safety gloves on." Pl.'s Resp. at 3. The defendant states in her affidavit that she would have "written the 'Disobeying a Direct Order' misconduct charge against the Plaintiff regardless of whether he stated he was going to write a grievance because it is my belief that it is not an inmate relief worker's prerogative to refuse to work an assigned task and walk off the assignment after being given a direct order to do so." Dolce Aff. ¶ 5. The plaintiff has pointed to no evidence contradicting the defendant's claim that she would have filed the charge regardless of the plaintiff's threatened grievance. Nor has the plaintiff requested an opportunity for discovery to present his claim, or otherwise suggested that he could somehow establish a contrary fact. *See* Fed. R. Civ. P. 56(f). Because there is no genuine dispute as to whether the defendant would have issued a major misconduct violation even in the

absence of the protected activity, the plaintiff has failed to produce evidence sufficient to defeat the motion for summary judgment on the First Amendment retaliation claim.

B.

The plaintiff claimed that the defendant violated his Eighth Amendment right by subjecting him to cruel and unusual punishment when she ordered him to wash the pots and pans without gloves. This claim was referenced in the body of the plaintiff's response to the defendant's motion for summary judgment, but the magistrate judge did not address it in the report and recommendation. The plaintiff's sole argument on this claim is that the "violation of 'disobeying a direct order' was no more than him exercising his eighth amendment constitutional right not to be subjected to cruel and unusual punishment, i.e., scalding himself with hot water." Pl.'s Obj. at ¶ 1.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's evolving standards of decency. *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir. 1987). "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation." *Farmer v. Brennan*, 511 U.S. 825, 837-838 (1994).

There are two general categories of Eighth Amendment claims in a prison setting: "excessive use of government force," and unlawful "conditions of confinement." *Thaddeus-X v. Blatter*, 175

F.3d 378, 400-01 (6th Cir. 1999) (en banc). A conditions-of-confinement claim is one that involves the denial of basic human needs or unsafe conditions in prison, such as exposure to open electrical connections, unsafe drinking water, prolonged exposure to tobacco smoke, exposure to toxic substances, and denial of medical care. *See Helling v. McKinney,* 509 U.S. 25, 32-34 (1993). An excessive-use-of-government-force claim is one that involves "unnecessary and wanton pain and suffering." *Whitley v. Albers*, 475 U.S. 312, 320 (1986). Although both categories involve a "wantonness" component, a key difference in the applicable legal standards is the state-of-mind element the plaintiff must allege and prove. *Thaddeus-X*, 175 F.3d at 401. A conditions-of-confinement claim requires proof that the defendant acted with deliberate indifference to an inmate's serious needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). An excessive-use-of-force claim requires proof that the defendant acted with a malicious and sadistic intent. *Thaddeus-X,* 175 F.3d at 401. "In other words, the state-of-mind showing that a plaintiff must allege and meet in cases of excessive force is much higher than in conditions-of-confinement cases." *Ibid.*

According to the plaintiff, he was ordered by the defendant to stick his hands in scalding water. Surely, such a claim implicates the Eighth Amendment's prohibition on excessive force against an inmate. However, the plaintiff has failed to produce any evidence that the defendant had the requisite state of mind when she issued that command. For instance, as the hearing officer observed, there is no evidence that the water in fact was hot, and there certainly is no evidence that the defendant knew that the water temperature was dangerously hot.

The plaintiff has provided evidence that he informed the defendant that "he need[ed] gloves to do the work." Pl.'s Decl. ¶ 2. However, the expressed desire for gloves does not communicate a risk of injury. The plaintiff also suggests that the Court could infer the defendant's knowledge

from her statements. In the first statement "she told Plaintiff she would try to find him some gloves to wear while on the assignment" and in the second she stated that "he does not need gloves to ware [sic] in the dish tank." Obj. at 3. Neither of the defendant's conflicting statements in the record indicates that she realized there was a substantial risk of harm to the plaintiff.

The plaintiff contends that the water temperature was over one hundred degrees; however he does not provide any evidence that the defendant knew that. The Court finds that there is no evidence in the record from which a fact finder could infer that the defendant's state of mind was malicious and sadistic when she instructed the plaintiff to wash the pots and pans. His Eighth Amendment claim, therefore, must fail.

### III.

After conducting a *de novo* review of the record in light of the parties' objections, the Court is satisfied that the defendant's motion for summary judgment should be granted. Although the magistrate judge did not correctly apply the law and one of the plaintiff's objections has merit, the Court believes the plaintiff's case ultimately must fail.

Accordingly, it is **ORDERED** that the magistrate judge's report is **REJECTED IN PART**, and the recommendation [dkt #15] is **ADOPTED**; and the plaintiff's objections [dkt #18] are **SUSTAINED IN PART AND OVERRULED IN PART**.

It is further **ORDERED** that the defendant's motion for summary judgment [dkt #9] is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

                                          s/David M. Lawson
                                          DAVID M. LAWSON
                                          United States District Judge

Dated: August 19, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 19, 2009.

                                s/Susan K. Pinkowski
                                SUSAN K. PINKOWSKI